IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SAN JUAN BAUTISTA MEDICAL CENTER,

Plaintiff,

v.

HERMANDAD DE EMPLEADOS DE SALUD
Y OTRAS AGENCIAS,

Defendant.

CIVIL NO. 09-2249 (CVR)

## OPINION AND ORDER

### INTRODUCTION

Above plaintiff, San Juan Bautista Medical Center, Inc. (hereafter "Medical Center"), filed a complaint and a request for injunction against defendant Hermandad de Empleados de Salud y Otras Agencias (hereafter defendant "Hermandad" or the "Union") which is a labor organization representing the employees at plaintiff's hospital. Thereafter, plaintiff Medical Center withdrew the request for injunction and the case continued on the merits.

The verified complaint stems from an alleged violation of the collective bargaining agreement (hereafter "the Agreement") between the parties when, upon being in disagreement with payment of the Christmas' bonuses and assignment of *per diem* shifts, Hermandad conducted a work stoppage. Thus, plaintiff is claiming damages, on the merits, which were suffered as a result of the work stoppage. (Docket No. 1).

Plaintiff Medical Center has requested partial summary judgment as to liability upon defendant Hermandad having unlawfully engaged in a work stoppage on December 16, 2009, in violation of the collective bargaining agreement. (Docket No. 38). Defendant

Hermandad filed its opposition stating the collective bargaining agreement expressly excluded a "no-strike/no lock-out" clause, thus requiring solely certain notification be provided before a work stoppage.  (Docket No. 47).

The parties previously consented to jurisdiction by a United States Magistrate Judge.  Thus, we are in a position to issue this Opinion and Order.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law."  Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact."  Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir.  1997).  A fact is deemed "material" if it potentially could affect the outcome of the suit.  *Id.*  Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor."  *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge

all reasonable inferences in the party's favor." <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994).  There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." <u>Greenburg v. Puerto Rico Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987).  In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." <u>Cadle Co.  v. Hayes</u>, 116 F.3d 957, 960 (1st Cir. 1997).

### UNCONTESTED FACTS

**A.     Plaintiff Medical Center's Uncontested Facts:**

1.      Medical Center and Hermandad are parties to a collective bargaining agreement which is to expire on June 17, 2012.  *Plaintiff's Uncontested ¶1; Exhibit 1; Exhibit 2, Unsworn statement of Calvine Tua.*

2.      Article 13 of the agreement, entitled *Labor Peace* provides in Section 1:

The parties agree to resolve all grievances, controversies, and claims that may arise with regards to the interpretation and application of this agreement through the mechanisms herein stated.   (Translation supplied).

*Plaintiff's Uncontested ¶2; Exhibit 3, Agreement.*

3.      Article 10 of the Agreement entitled *Grievances and Arbitration Procedures* provides for the resolution of grievances by way of the mechanisms set forth therein.  *Plaintiff's Uncontested ¶4; Exhibit 4.*

4.      The Agreement states at Article 26 that the Union members' Christmas bonuses shall be paid in accordance with applicable law, to wit, Puerto Rico Law 148 of June 30, 1969.  ("Law 148").  *Plaintiff's Uncontested ¶5; Exhibit 5.*

San Juan Bautista Medical Center v. Hermandad de Empleados de la Salud y Otras Agencias
Civil No. 09-2249 (CVR)
Opinion and Order
Page No. 4

5.      The Medical Center determined that, upon a record of financial losses [*Plaintiff's Uncontested ¶6; Exhibit 2],* it would be necessary to apply for a hardship waiver in order to be excused from paying its employees the statutory Christmas Bonus established by Law 148. *Plaintiff's Uncontested ¶7; Exhibit 2*.

6.      Around the beginning of November 2009, the Hermandad was informed the Medical Center had applied for a hardship waiver due to financial losses and that it had been approved for which no bonuses were to be paid for the year 2008-2009. *Plaintiff's Uncontested ¶8, Exhibit 2*.

7.      Medical Center applied for and obtained a hardship exemption from the Puerto Rico Department of Labor and Human Resources which legally exempted the institution from paying the legally required Christmas bonus for the 2008-2009 work year. *Plaintiff's Uncontested ¶9; Exhibit 6, Report on Hardship Waiver Applications (indicating the Medical Center's request as "Accepted")*.

8.      The Hermandad contested this interpretation of the Agreement, claiming its Union members were still entitled to receive their bonuses under Article 26 of the Agreement. *Plaintiff's Uncontested ¶10; Exhibit 2*.

9.      In order to resolve the matter, a meeting was held on December 9, 2009 with Mr. Sixto Arvelo, Ms. María Bigio, Mr. Julio Andino, and Mr. Calvine Tua. *Plaintiff's Uncontested ¶ 11; Exhibit 2*.

10.   During the meeting, the Union asserted that if the Christmas bonuses were not paid, a work stoppage would be initiated. *Plaintiff's Uncontested ¶12; Exhibit 2.*

11.   The Medical Center indicated  a work stoppage was not desirable for either party, and despite having been granted a hardship waiver, offered to pay the Union members a voluntary holiday compensation of one hundred dollars ($100.00). *Plaintiff's Uncontested ¶13; Exhibit 2.*

12.   Various offers and counter-offers were exchanged, but no agreement could be reached between the Medical Center and the Hermandad.  *Plaintiff's Uncontested ¶14; Exhibit 2.*

13.   On December 14, 2009, the Hermandad informed it would move forward with the work stoppage.  *Plaintiff's Uncontested ¶15; Exhibit 7, newsletter dated December 14, 2009.*

14.   Another meeting was held on December 15, 2009 in order to attempt to head off the work stoppage. *Exhibit 2.*

15.   The only reason mentioned by the Union for the work stoppage during that meeting was the payment of the Christmas bonuses. *Id.*

16.   Since no agreement was reached, Mr. Julio Andino and Mr. Calvine Tua told the Union's delegates to submit the matter to the mandatory arbitration and grievance procedure established by the Agreement. *Exhibit 2.*

17.   The Union insisted the work stoppage would proceed as planned. *Exhibit 2.*

18.   On December 15, 2009, Mr. Julio Andino, Executive Director of the Medical Center, sent out a letter to the Union members reminding them the dispute

regarding the Christmas bonus was arbitrable and they should not participate in the illegal work stoppage. *See, Letter dated December 15, 2009, from Mr. Julio Andino to all Union Members, Exhibit 8.*

19. Because of the above dispute, the Union started a work stoppage on December 16, 2009 at 6:00 am. *Exhibit 2.*

20. The Union subsequently announced the work stoppage was also related to the late payment of salaries, payment of uniforms, holidays, overtime, and health and security. *See UEEPA newsletter dated December 28, 2009, Exhibit 9.*

21. The above matters are governed by the Agreement and subject to the mandatory Grievance and Arbitration Procedure, at Article 8 (Per Diem); Article 22 (Overtime); Article 25 (Uniforms); Article 26 (Christmas Bonus); Holidays (Article 27); Article 34 (Health and Security); and Article 45 (Payment of Salaries). See Articles 8 of the Agreement, *Exhibit 10*; Article 22, *Exhibit 11*; Article 25*, Exhibit 12; Exhibit 5;* Article 27, *Exhibit 13*; Article 34, *Exhibit 14*; and Article 45, *Exhibit 15.*

**B.    Defendant Hermandad's Uncontested Facts:**

In opposition to partial summary judgment as to liability claimed by plaintiff Medical Center, defendant Hermandad submits as uncontested:

1.    The Agreement provides in Article 13, the following:

This Agreement is signed with the purpose of stimulating and achieving continuous progress in the best relations between the Hospital and the members of the Union who are employees of the same and are represented

by the Union. *The parties agree to resolve any controversies, complaints, grievances or claims which may arise in relation to the interpretation and application of this agreement using the mechanisms herein created.* (Emphasis supplied).

*Deft's Uncontested ¶2;  Plaintiff's Exhibit 1, p.6.*

2.      Defendant qualified plaintiff's uncontested ¶3 to the extent that Section 3 must be read together with section 2.  Section 2 states:

The Hospital agrees to keep the Union informed of any administrative change which may affect the rights of union members, such as a temporary or permanent lock out.

        Section 3 states:

Furthermore, the Union agrees to honor the terms of this Agreement, guarantee constructive peace in the workplace and use all of the resources that are available and characterize a professional union in order to ensure compliance with this contractual obligations.

*Deft's Uncontested ¶ 3; Plaintiff's Exhibit 1, p.6.*

3.      Defendant Hermandad qualified plaintiff Medical Center's uncontested statement ¶4, in that Article 10 provides for the resolution of grievances limited to "the controversies, disputes, differences, complaints, and claims which may emerge from the interpretation, application, and administration [...]" of the Agreement. It does not include the resolution of *unfair labor practices related to unilateral changes to the terms and conditions of the Agreement without bargaining to an impasse as required by federal law.*

San Juan Bautista Medical Center v. Hermandad de Empleados de la Salud y Otras Agencias
Civil No. 09-2249 (CVR)
Opinion and Order
Page No. 8

(Emphasis supplied). *Deft's Uncontested ¶4; Plaintiff's Exhibit 1, p. 8; Deft's Exhibit 1, letter from Department of Labor and Human Resources; Exhibit 2, decision of Administrative Law Judge of the NLRB in Case No. 24-CA-11419, p. 7.*

As such, defendant Hermandad considers and has thus raised plaintiff Medical Center violated Section 8(a)(5) and (1) of the National Labor Relations Act ("NLRA") when it modified the Christmas bonus provisions of the parties' collective-bargaining agreement by failing to pay the Christmas bonus provided therein without the consent of the Hermandad.

4.    Defendant qualified plaintiff's uncontested ¶ 5 in that the Agreement states that "the Hospital [plaintiff Medical Center] acknowledges the payment of a Christmas Bonus to each union member of the bargaining units, in accordance with the provisions established in Law No. 148 enacted June 30, 1969, as amended, during the first year of the [Agreement]." *Deft's Uncontested ¶5; Plaintiff's Exhibit 1, p. 20; Deft's 1 and Exhibit 2, pp. 5, 7.*

5.    Defendant qualified plaintiff's uncontested ¶6, that, upon a claim of inability to pay during a bargaining session after the commencement of this action, the Hermandad requested from plaintiff the financial information to sustain the plaintiff's inability to pay claim. Plaintiff refused to provide the information requested, and defendant filed unfair labor practice charges before the NLRB for bad faith bargaining. The parties have reached a settlement of that case and are currently before the NLRB Regional Director for compliance. To this

date, plaintiff has failed to comply with the NLRB's order. *Def't's Uncontested ¶6; Exhibit 2, p. 2.*

6.      Defendant admitted plaintiff's uncontested ¶ 7 that the plaintiff requested a waiver from its obligation to pay the Christmas Bonus to non-union employees. *Def't's Uncontested ¶7; Exhibit 1.*

7.      Defendant admitted plaintiff's uncontested ¶8 in that plaintiff was obliged by the Agreement to pay the Christmas bonus pursuant to the terms of Law 148 and that the plaintiff indicated it was not going to comply with its obligation. *Def't's Uncontested ¶8; Plaintiff's Exhibit 1, p. 20; Def't's Exhibit 1.*

8.      Defendant denied plaintiff's uncontested ¶9. *Def't's Uncontested ¶9; Exhibits 1 and 2, pp. 5 and 7.*

9.      Defendant qualified plaintiff's uncontested ¶ 10.  The issue is not a matter of interpretation of the Agreement but, by not paying the bonus to the Union members, plaintiff violated Section 8(a)(5) and (1) of the National Labors Relations Act when it modified the Christmas bonus provisions of the parties' collective-bargaining agreement by failing to pay the Christmas bonus therein without the consent of the Hermandad. Furthermore, the Puerto Rico Department of Labor and Human Resources expressly stated that Union members were excluded from the waiver extended.  Nevertheless, plaintiff chose, again, to ignore its obligations under the contract. *Def't's Uncontested ¶ 10; Plaintiff's Exhibit 1, p. 20; def't's Exhibits 1 and 2, p. 7.*

San Juan Bautista Medical Center v. Hermandad de Empleados de la Salud y Otras Agencias
Civil No. 09-2249 (CVR)
Opinion and Order
Page No. 10

10. Defendant admitted plaintiff's uncontested ¶ 11 in that a meeting was held at the request of the Hermandad on December 9, 2009. *Deft's Uncontested ¶11.*

11. Defendant denied plaintiff's uncontested ¶ 12. The notice of the work stoppage was sent to Dr. Yocasta Brugal more than a month prior to the December 9th meeting. *Deft's Uncontested ¶12, Exhibit 3, Notice pursuant to 29 USC 158(g).*

12. Defendant admits plaintiff's uncontested ¶13, clarifying that plaintiff violated Section 8(a)(5) and (1) of the National Labor Relations Act when it modified the Christmas bonus provisions of the parties' Agreement by failing to pay the Christmas bonus provided without the consent of the Hermandad. *Deft's Uncontested ¶13; Plaintiff's Exhibit 1, p.20; Deft's Exhibit 1 and 2 p. 7.*

13. Defendant denies plaintiff's uncontested ¶14. Plaintiff Medical Center modified the Christmas bonus provisions of the parties' Agreement by failing to pay the Christmas bonus provided therein without the consent of Hermandad. *Deft's Uncontested ¶14; Plaintiff's Exhibit 1, p. 20; Deft's Exhibits 1 and 2, p. 7.*

14. Defendant denies plaintiff's uncontested at ¶15. The concerted activity was announced on November 3, 2009. *Deft's Uncontested ¶15; Deft's Exhibit 3.*

15. Defendant denies plaintiff's uncontested ¶ 16 in that the meeting held on December 15th was to prevent the concerted activity which was announced on November 3, 2009. *Deft's Uncontested ¶16; Exhibit 3.*

San Juan Bautista Medical Center v. Hermandad de Empleados de la Salud y Otras Agencias
Civil No. 09-2249 (CVR)
Opinion and Order
Page No. 11

16.    Defendant denies plaintiff's uncontested ¶¶ 17, 18 and 19. *Deft's Uncontested ¶17; Exhibit 3.*

17.    Defendant admits plaintiff's uncontested ¶20 that on December 15, 2009, Mr. Julio Andino, Executive Director of the Medical Center, sent out a coercion letter to the Union members threatening them with disciplinary action if they participated in the exercise of their NLRB Section 7 rights. For this, the plaintiff had to post a notice. The rest of the paragraph is denied. *Deft's Uncontested ¶18; Exhibit 2, p. 12.*

18.    Defendant denied plaintiff's uncontested ¶¶ 21, 22 and 23. *Deft's uncontested ¶19; Exhibits 2 and 3.*

**C.    Defendant Hermandad submits the following additional facts:**

1.    Defendant Hermandad filed unfair labor practices charges against plaintiff before the National Labor Relations Board on December 15, 2009. *Exhibit 4.*

2.    The NLRB issued a complaint and the case was referred to an Administrative Law Judge ("ALJ") of the Board for hearing evidence and issuing a decision. Based on the record, the post-trial briefs, and the authorities cited therein, the ALJ concluded and found that the plaintiff had violated the National Labor Relations Act substantially as alleged in the complaint. *Exhibit 2.*

3.    The ALJ found the Union Executive Director Sixto Alvelo notified plaintiff in writing of certain actions the Hermandad would be taking including a 24-

San Juan Bautista Medical Center v. Hermandad de Empleados de la Salud y Otras Agencias
Civil No. 09-2249 (CVR)
Opinion and Order
Page No. 12

hour strike commencing at 6 a.m. on December 16, 2009. It was explained that the justification for the various actions was plaintiff's unfair labor practices and bad faith negotiations. *Exhibit 2, p. 4.*

4.    The ALJ further found that on December 11, 2009, Deputy Director Maldonado López wrote Union Executive Director Sixto Alvelo acknowledging the Union's representative status of certain of the plaintiff's employees and indicated the exoneration granted to the plaintiff regarding the 2009 Christmas bonus would only apply to those employees who are not part of the Union. He also stated plaintiff had been so notified. The parties stipulated plaintiff never paid the 2009 Christmas bonus. *Exhibit 2, p. 5.*

5.    The ALJ concluded that the December 4, 2009, a letter to plaintiff from Maldonado López points out that Puerto Rico's Christmas Bonus Law does "not apply in cases where the employees receive a Christmas bonus by means of a Collective Bargaining Agreement" and that any exemption granted would apply only "to those employees not covered by the Collective Bargaining Agreement." Thus, the exemption did not apply to employees who were covered by the Agreement. Upon the receipt of the December 4 letter, plaintiff had two choices: "(1) obtain the consent of the Union to pay a different amount for the Christmas bonus; or (2) pay the Christmas bonus." *Exhibit 2, p. 7.*

6.    The ALJ further concluded the Christmas bonus, monetary compensation comparable to wages, was a term and condition of employment of the employees in the Union and was a mandatory subject of bargaining. *Id.*

## LEGAL ANALYSIS

Plaintiff Medical Center submits a request for partial summary judgment as to liability as to the defendant Hermandad's work stoppage since the collective bargaining agreement in force up until June 17, 2012 establishes that all disputes as to interpretation and application of the same were to be submitted to arbitration procedure as set forth in its Articles 10 and 13.

In turn, defendant Hermandad opposes the request of liability since the collective bargaining agreement consciously excluded a "no strike/no lock-out" clause and any concerted activities, such as the work stoppage in compliance with certain notification to the employer, was a lawful activity over a matter not subject to arbitration for constituting unfair labor practices by the employer Medical Center, issue also decided by the National Labor Relations Board.

As such, it is uncontested that the pending issues as to summary judgment evolve around the work stoppage carried out on December 16, 2009, the collective bargaining agreement, its legal interpretations and/or unfair labor practice.

It is settled that an employer violates Section 8(a)(5) and (1) of the NLRA as elucidated in Section 8(d) of the Act, 29 U.S.C.A § 158 (a)(5), (1) and (d), by modifying a term of a collective bargaining agreement without the consent of the other party while the

San Juan Bautista Medical Center v. Hermandad de Empleados de la Salud y Otras Agencias
Civil No. 09-2249 (CVR)
Opinion and Order
Page No. 14

contract is in effect. <u>NLRB v. Katz</u>, 369 US 736, 82 S.Ct. 1107 (1962).[1] As such, an employer is prohibited from modifying the terms and conditions of employment established by a collective-bargaining agreement without first obtaining the consent of the union. *Id.*

Plaintiff Medical Center rests its contention for liability to be found mainly in <u>Boys Markets, Inc. v. Retail Clerks Union, Local 770</u>, 398 U.S. 235, 90 S.Ct. 1583 (1970) wherein a violation of the no-strike obligation under a collective bargaining agreement called for enforceable arbitration of a grievance under the rationale that collective bargaining aims of peaceful resolution of industrial disputes is developed further by arbitration.  Still, contrary to this present case, the "no-strike no lock-out" clause therein was not implied, but rather made part of the collective bargaining agreement between the parties.[2]

The defendant Hermandad states the Agreement with the plaintiff employer Medical Center lacks a "no strike/ no lock-out" clause, for which it should not be considered as implied. In addition, defendant submits the same dispute giving rise to the complaint was adjudicated in Case No. 24-CA-11416, by an ALJ of the NLRB, wherein defendant filed a charge for unfair labor practices against plaintiff Medical Center before the National Labor Relations Board on December 15, 2009, as to the matters asserted in the verified complaint.

Regardless the NLRB has entertained the issue between plaintiff Medical Center and defendant Hermandad in regards with payment of the Christmas bonus, the Court of

---

[1]  In <u>Katz</u>, the employer instituted unilateral changes in respect to sick leaves, general wage increases and merit increased during the negotiations of a new contract before the existence of any possible impasse.  *See* <u>NLRB v. Almeida Bus Lines, Inc.</u>, 333 F.2d 729 (1ˢᵗ Cir. 1964).

[2]  <u>Boys Market</u> allows an injunction provided it is established that (1) collective bargaining agreement between parties provides for mandatory binding arbitration, (2) dispute giving rise to concerted action which is sought to be enjoined is subject to binding arbitration under that agreement, and (3) ordinary principles of equity warrant injunctive relief.

San Juan Bautista Medical Center v. Hermandad de Empleados de la Salud y Otras Agencias
Civil No. 09-2249 (CVR)
Opinion and Order
Page No. 15

Appeals for the First Circuit has stated the role played by the Board in § 8(d) cases is somewhat limited. The section applies only to mandatory, not permissive, subjects of bargaining. Allied Chem. And Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plata Glass Co., 404 U.S. 157, 184, 92 S.Ct. 383 (1971).  Section 8(d) is not meant to confer on the Board broad powers to interpret collective bargaining agreements. In enacting Section 301, Congress determined "that the Board should not have general jurisdiction over all alleged violations of collective bargaining agreements and that such matters should be placed within the jurisdiction of the courts." NLRB v. C & C Plywood Corp., 385 U.S. 421, 427, 87 S.Ct. 559 (1967).   To do otherwise "would have been a step toward governmental regulation of the terms of those agreements," rather than addressing the mechanisms by which such agreements could be reached. Id. Thus, § 8(d) is commonly understood as being constrained by Section 301.

However, the findings of the NLRB regarding unfair labor practice on the charge filed by Hermandad may have no substantive effect, although may be provided with weight and deference, as to summary disposition of the matter raised.  See Bath Marine Draftsmen's Ass'n v. NLRB, 475 F.3d 14 (1st Cir. 2007) (deference was due to NLRB's finding of no bad faith on employer's part, in unfair labor practice case in which unions alleged that employer had made improper unilateral modification of collective bargaining agreement by unilaterally merging pension plan with that of employer's parent; employer's position that the collective bargaining agreement permitted unilateral change in question was arguable. NLRA, § 8(d), 29 U.S.C.A. § 158(d)); Five Star Transp. Inc. v. NLRB, 522 F.3d 46 (1st Cir. 2008) (same).

San Juan Bautista Medical Center v. Hermandad de Empleados de la Salud y Otras Agencias
Civil No. 09-2249 (CVR)
Opinion and Order
Page No. 16

Plaintiff Medical Center submits <u>Gateway Coal Co. v. United Mine Workers'</u> rationale[3] would require that, in the absence of an explicit expression of an intention to negate the implied no-strike obligation, agreement to arbitrate and duty not to strike should be construed as having a coterminous application. Nevertheless, <u>Gateway Coal</u> also states that an obligation to arbitrate a labor dispute compels a party to submit grievance only if it has contracted to do so.[4]

Meanwhile, defendant Hermandad avers the Agreement in place between the parties consciously left out a "no-strike/no-lock out" clause and furthermore, the parties had therein agreed to give notice to each other in case they were going to engage in any such conduct. *See Sections 2 and 3 of the Agreement*. The required arbitration in the Agreement refers to grievances which may result from its interpretation and/or application.

One should take notice that several circuit cases have held waivers of the right to strike against unfair labor practices must be in clear and unmistakable language. *See* <u>Newspaper Production Co.</u>, 503 F.2d 821, 830 (5th Cir. 1974); <u>Kellogg Co. v. NLRB</u>, 457 F.2d 519, 525 (6th Cir. 1972).Where a provision would normally be implied in an agreement by operation of the Act itself, a waiver should be express and a mere inference, no matter how strong, should be held insufficient. <u>NLRB v. Perkins Machine Co.</u>, 326 F.2d 488, 489 (1st Cir. 1964).

Similarly to <u>Perkins</u>, not only was there no express waiver in this case, but the inferences supporting the employer's position were held inconclusive. *See* <u>Local 25,</u>

---

[3]   <u>Gateway Coal Co. v. United Mine Workers of America</u>, 414 U.S. 368, 382, 94 S.Ct. 629 (1974).

[4]   <u>Gateway Coal</u> also included a very general arbitration clause which covered any local trouble.

Teamsters Union, AFL v. W. L. Mead, Inc., 230 F.2d 576 (1st Cir. 1956) (an implied no-strike clause construed from the arbitration machinery set forth in the agreement as the exclusive means of adjudicating all matters).

Plaintiff Medical Center discusses the application of the coterminous rationale when discussing the distinction between express and implied no-strike clauses since courts have held that the coterminous interpretation doctrine limited the effect of no-strike clauses to arbitrable disputes only in the latter case. The Sixth Circuit, in Ryder Truck Lines v. Teamsters Freight Local Union No. 480, 727 F.2d 594 (6th Cir. 1984), provided an excellent discussion of the doctrine of coterminous application and concluded that "no-strike clauses need not be construed narrowly to prohibit strikes only over arbitrable disputes." *Id.* at 601 (*quoting* Pacemaker Yacht Co. v. NLRB, 663 F.2d 455, 460 (3d Cir. 1981)). To the contrary, however, in United States Steel Corp. v. NLRB, 711 F.2d 772 (7th Cir. 1983), the Seventh Circuit held that the question of whether a no-strike clause barred sympathy strikes was to be answered by examining the contract and bargaining background, rather than by applying the principle of coterminous application. *Id.* at 776-78. At other instances, the courts determined to be satisfied that the doctrine of coterminous application did not govern interpretation of the no-strike clause. Rather, it is to be determined the scope of the clause by examining the language of the agreement and the external circumstances of the controversy.[5]

---

[5] *See* Iowa Beef Processors v. Amalgamated Meat Cutters, 597 F.2d 1138, 1144 (8th Cir. 1979); *see* John Morrell & Co. v. Local Union 304A of United Food and &&, 913 F.2d 544 (8th Cir. 1990).

San Juan Bautista Medical Center v. Hermandad de Empleados de la Salud y Otras Agencias
Civil No. 09-2249 (CVR)
Opinion and Order
Page No. 18

Thus, the majority and the dissenters in <u>Buffalo Forge Co. v. Steelworkers</u>, 428 U.S. 397, 96 S.Ct. 3141 (1976), appeared to agree that it is appropriate for federal courts in the first instance to determine whether the strike was over any dispute between the Union and the employer that was even remotely subject to the arbitration provisions of the contract. *Id*. at 407, 96 S.Ct. at 3147 (opinion of the Court); *see Id*. at 431, 96 S.Ct. 3141 (Stevens, J., dissenting).

Even assuming the scope of the no-strike pledge was arbitrable as claimed by plaintiff Medical Center, it is by no means clear that the Union was under a duty not to strike pending resolution of the question by an arbitrator. In <u>Buffalo Forge</u>, 428 U.S. at 407, 96 S.Ct. 3141[6], the Supreme Court noted that a no strike pledge would be implied only with respect to issues over which a union had agreed to arbitrate.

In the present case, defendant Hermandad has shown in its opposition to partial summary judgment requested by plaintiff Medical Center as uncontested a ruling that the employer Medical Center incurred in an unfair labor practice.[7] Viewing the no strike clause, in context, as logically limited to stoppages over economic issues properly the subject of collective bargaining or arbitration, the Court has held that there was no adequate basis for implying the existence of a waiver of the right to strike over unfair labor practices

---

[6] *See* <u>NLRB v. C.K. , Smith & Co., Inc.</u>, 569 F.2d 162, 168 (1st Cir. 1977) (ascribing little weight to the employer's argument that the bargaining history behind the no-strike clause reveals that the union was waiving its right to strike even over serious unfair labor practices).

[7] Generally, the question whether given set of facts constitutes unfair labor practice is in first instance for the NLRB. NLRA  8,29 U.S.C.A.  158. *See* <u>England, Inc. v. Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of America, AFL-CIO, Division 1318"Trailways of New England, Inc. v. Amalgamated Ass'n of St., Elec.</u>, 343 F.2d 815 (1st Cir. 1965).

undermining the collective bargaining relationship. *See* Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 281, 283 76 S.Ct. 349, 357-358 (1956).  More so, subsequent circuit cases have also held that waivers of the right to strike against unfair labor practices must be in "clear and unmistakable language." Newspaper Production Co. v. NLRB,  503 F.2d 821, 830 (5th Cir. 1974); Kellogg Co. v. NLRB, 457 F.2d 519, 525 (6th Cir. 1972); see NLRB v. C.K. , Smith & Co., Inc., 569 F.2d 162 (1st Cir. 1977).  Plaintiff Medical Center has not established the issues raised do not constitute an unfair labor practice which, as such, would not require the Union to resort to grievances and arbitration mechanism prior to a work stoppage. Plaintiff Medical Center has not established either as undisputed that the parties are bound by a no-strike/no work stoppage implied clause.

In light of the above discussed, partial summary judgment on liability as to the damages incurred from the work stoppage is DENIED.

## CONCLUSION

In view of the above, plaintiff Medical Center's Motion for Partial Summary Judgment (Docket No. 38) is **DENIED**.

In San Juan, Puerto Rico, this 5th day of October of  2010.


s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE